**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

STEPHEN W. C.,

                                        Plaintiff,

        v.

                                                    No. 1:24-CV-546
COMMISSIONER OF SOCIAL SECURITY,                    (AMN/PJE)

                                        Defendant.

**APPEARANCES:**                        **OF COUNSEL:**

Hiller Comerford Injury & Disability Law    JUSTIN M. GOLDSTEIN, ESQ.
6000 North Bailey Avenue- Suite 1a
Amherst, New York 14226
Attorneys for plaintiff


Social Security Administration          VERNON NORWOOD, ESQ.
Office of the General Counsel
6401 Security Boulevard
Baltimore, Maryland 21235
Attorneys for defendant

**PAUL J. EVANGELISTA**
**U.S. MAGISTRATE JUDGE**


### REPORT-RECOMMENDATION AND ORDER[1]

        Stephen W. C.[2] ("plaintiff") brings this action pursuant to 42 U.S.C. § 405(g)

seeking review of a decision by the Commissioner of the Social Security Administration

("the Commissioner") denying his application for supplemental security income ("SSI")

---

[1] This matter was referred to the undersigned for Report-Recommendation and in accordance with General Order 18 and N.D.N.Y. L.R. 72.3(e).
[2] In accordance with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in 2018 to better protect personal and medical information of non-governmental parties, this Report-Recommendation and Order will identify plaintiff's last name by initial only.

benefits.  *See* Dkt. No. 1.  Plaintiff moves for the Commissioner's decision to be vacated and remanded for further proceedings.  *See* Dkt. No. 13.  The Commissioner moves for the decision to be affirmed.  *See* Dkt. No. 15.[3]  Plaintiff filed a reply.  *See* Dkt. No. 16. For the following reasons, it is recommended that plaintiff's cross-motion be granted, the Commissioner's cross-motion be denied, and the Commissioner's decision be reversed and remanded for further proceedings.

## I.  **Background**

On December 2, 2020, plaintiff filed a Title XVI application for SSI benefits, alleging a disability onset date of October 31, 2005.  *See* T. at 241-47.[4]  On April 1, 2021, the Social Security Administration ("SSA") denied plaintiff's claim.  *See id*. at 135-40.  Plaintiff sought reconsideration, which the SSA denied on June 23, 2021.  *See id.* at 147-49, 151-62.  Plaintiff appealed and requested a hearing.  *See id*. at 181-202.  On January 11, 2023, a hearing was held before Administrative Law Judge ("ALJ") Paul Kelly.  *See id*. at 34-57.  On May 17, 2023, the ALJ issued an unfavorable decision. *See id*. at 14-33.  On February 22, 2024, the Appeals Council affirmed the ALJ's determination and the decision became final.  *See id*. at 1-6.  Plaintiff timely commenced this action on April 19, 2024.  *See* Dkt. No. 1.

## II.  **Legal Standards**

## A.  **Standard of Review**

---

[3] This matter has been treated in accordance with General Order 18.  Under that General Order, once issue has been joined, an action such as this is considered procedurally as if cross-motions for judgement on the pleadings have been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

[4] "T." followed by a number refers to the pages of the administrative transcript.  *See* Dkt. No. 8.  Citations to the administrative transcript refer to the pagination in the bottom, right-hand corner of the page.  Citations to the parties' briefs refers to the pagination generated by the Court's electronic filing and case management program located at the header of each page.

"In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled." *Joseph J. B. v. Comm'r of Soc. Sec.*, No. 1:23-CV-652 (BKS/CFH), 2024 WL 4217371, at *1 (N.D.N.Y. Aug. 29, 2024), *report and recommendation adopted,* No. 1:23-CV-652 (BKS/CFH), 2024 WL 4216048 (N.D.N.Y. Sept. 17, 2024) (citing 42 U.S.C. §§ 405(g), 1388(c)(3)); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). "Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence." *Id.* (citing *Johnson v. Bowen*, 817 F.2d 983, 985-86 (2d Cir. 1987)); *see also Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). "Substantial evidence is 'more than a mere scintilla,' meaning that in the record one can find 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (per curiam) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971))). "The substantial evidence standard is a very deferential standard of review . . . [This] means once an ALJ finds facts, we can reject [them] only if a reasonable factfinder would have to conclude otherwise." *Id.* (quoting *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam)) (internal quotations marks omitted). "Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion is arguably supported by substantial evidence." *Id.* (citing *Martone v. Apfel*, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing *Johnson*, 817 F.2d at 986)). "However, if the correct legal standards were applied and the ALJ's finding is supported by substantial evidence, such finding must be sustained 'even where substantial evidence

may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's].'" *Id.* (quoting *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992)).

## B. **Determination of Disability**

"Every individual who is under a disability shall be entitled to a disability . . . benefit . . . ." 42 U.S.C. § 423(a)(1)(E). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" *Id.* § 423(d)(1)(A). "A medically-determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience." *Joseph J. B.*, 2024 WL 4217371, at *2 (citing 42 U.S.C. § 423(d)(2)(A)). "Such an impairment must be supported by 'medically acceptable clinical and laboratory diagnostic techniques.'" *Id.* (citing 42 U.S.C. § 423(d)(3)). "Additionally, the severity of the impairment is 'based on objective medical facts, diagnoses[,] or medical opinions inferable from [the] facts, subjective complaints of pain or disability, and educational background, age, and work experience.'" *Id.* (quoting *Ventura v. Barnhart*, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing *Mongeur v. Heckler*, 722 F.2d 1033, 1037 (2d Cir. 1983))).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he [or she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his [or her] physical or mental ability to do basic work activities.

If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.

Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform . . .

*Berry*, 675 F.2d at 467 (spacing added).  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further."  *Joseph J. B.*, 2024 WL 4217371, at *2 (quoting *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003)).  "The plaintiff bears the initial burden of proof to establish each of the first four steps."  *Id.* (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1180 (2d Cir. 1998) (citing *Berry*, 675 F.2d at 467)).  "If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere."  *Id.* (citing *DeChirico*, 134 F.3d at 1180 (citing *Berry*, 675 F.2d at 467)).

## III.  **The ALJ's Decision**

Applying the five-step disability sequential evaluation, the ALJ first determined that plaintiff had "not engaged in substantial gainful activity since November 18, 2020, the application date."  T. at 19.  At step two, the ALJ found that plaintiff "has the following severe impairments: carpal tunnel syndrome, epilepsy, status post left collar bone

fracture, and cognitive deficit." *Id*. At step three, the ALJ determined that plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id*.

Before reaching step four, the ALJ concluded that plaintiff retained the residual functional capacity ("RFC") to

> perform light work as defined in 20 CFR 416.967(b) except: claimant can lift up to twenty pounds occasionally and ten pounds frequently; claimant can stand and walk for about eight hours in an eight-hour workday with normal breaks; claimant can sit for up to eight hours in an eight-hour workday with normal breaks; claimant can occasionally climb stairs and ramps, but can never climb ladders, ropes, or scaffolds; claimant can occasionally balance, stoop, kneel, crouch, and crawl; claimant must avoid all exposure to unprotected heights and dangerous machinery; claimant must avoid concentrated exposure to irritants such as fumes, odors, dust, gases, and poorly ventilated areas; claimant should avoid exposure to excessive noise; claimant should avoid exposure to excessive vibration; and claimant can perform simple, routine tasks in a work environment free of fast paced production, involves only simple work-related decisions, and entails few, if any, workplace changes.

T. at 22.[5] At step four, the ALJ determined that plaintiff "has no past relevant work." *Id*. at 27. At step five, the ALJ concluded that "[c]onsidering the claimant's age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national

---

[5] Light work is defined as

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b); 416.967(b).

economy that the claimant can perform." *Id*.  The ALJ concluded that plaintiff "has not been under a disability, as defined in the Social Security Act, since November 18, 2020, the date the application was filed." *Id*. at 28.

## IV. **Discussion**

### A. **Arguments**

Plaintiff argues that the ALJ erred in assessing his mental impairments, mental RFC, and related limitations because he "did not consider the neuropsychological evaluation completed by [Kirsty] Bortnik, Ph.D." or "evaluate the persuasiveness of Dr. Bortnik's opinion or explain how the opinion was considered in relation to any of the relevant findings, including the persuasiveness of the opinions that were credited."  Dkt. No. 13 at 11.  Plaintiff also argues that the ALJ's physical RFC finding is not supported by substantial evidence because the ALJ did not consider the effects of his carpal tunnel syndrome or the "manipulative limitations" of his hands.  *Id*. at 17.  Plaintiff further argues that the ALJ did not consider the consistency and supportability factors when evaluating Dr. Azad's consultative examination report.  *See id*. at 18.

The Commissioner argues that the ALJ's determination should be affirmed.  *See generally* Dkt. No. 15.   The Commissioner maintains that the ALJ's decision was supported by substantial evidence, plaintiff failed to meet his burden of demonstrating greater manipulative limitations of his hands, and the ALJ properly evaluated the medical source opinions of record.  *See id.* at 13-17.  More specifically, the Commissioner argues that the ALJ's assessment of Dr. Haas and Azad's medical opinions properly applied the consistency and supportability factors.  *See id*. at 13-18.   The Commissioner further

contends that the ALJ is not required to discuss Dr. Bortnik's opinion because it is stale. *See id.* at 15-16.

### B. Consideration of all the Medical Evidence

"An ALJ is required to consider all of the medical opinion evidence in the record." *Crane v. Comm'r of Soc. Sec. Admin.*, No. 22-CV-7133 (JMW), 2024 WL 4569417, at *14 (E.D.N.Y. Oct. 24, 2024) (quoting *Hahn v. Saul*, 20-CV-6124 (KAM), 2023 WL 4975970, at *4, (E.D.N.Y. Aug. 3, 2023) (citing 20 C.F.R. § 404.1520c(b))) ("We will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in your case record."). "Regardless of its source, the ALJ must evaluate every medical opinion in determining whether a claimant is disabled under the Social Security Act." *Berry v. Comm'r of Soc. Sec.*, No. 22-CV-7615 (PKC), 2024 WL 1382765, at *5 (E.D.N.Y. Mar. 21, 2024) (quoting *Williams v. Kijakazi*, No. 20-CV-8469 (JLC), 2022 WL 799478, at *12 (S.D.N.Y. Mar. 16, 2022) (quoting *Pena ex rel. E.R. v. Astrue*, No. 11-CV-1787 (KAM), 2013 WL 1210932, at *14 (E.D.N.Y. Mar. 25, 2013))); *see* 20 C.F.R. §§ 404.1527(c), 416.927(c).

"However, [a]n ALJ need not recite every piece of evidence that contributed to the decision, so long as the record permits [the Court] to glean the rationale of an ALJ's decision." *Tina S. v. Comm'r of Soc. Sec.*, No. 1:21-CV-219 (JLS), 2023 WL 4286039, at *6 (W.D.N.Y. June 29, 2023) (quoting *Cichocki V. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013)) (internal quotation marks omitted). "Failure to discuss medical opinion evidence may be harmless error." *Id*. (citing *Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010)) ("[W]here application of the correct legal principles to the record could lead [only to the same] conclusion, there is no need to require agency reconsideration."); *see Jessica Lynn*

*J. v. Comm'r of Soc. Sec.*, 645 F. Supp. 3d 128, 134 (W.D.N.Y. 2022) ("failure to discuss and/or weigh a medical opinion is not *per se* remandable error but may be found harmless error.").

The list of exhibits annexed to the ALJ's decision indicates that the ALJ reviewed "Office Treatment Records" from "Northeast Regional Epilepsy Group; Dr. Kirs[t]y Bortnik, PhD." T. at 31. In March 2017, Dr. Bortnik performed sixteen diagnostic tests and interviewed plaintiff before proffering eleven recommendations to aid plaintiff in overcoming the physical and mental limitations he faces in life generally. *See id*. at 351-57. Yet, the ALJ did not address Dr. Bortnik's opinion at any point of his decision or analyze whether Dr. Bortnik's opinion is supported by, and consistent with, the other medical evidence of record. *See id*. at 13-33.

Plaintiff argues that the Commissioner committed reversible error by not addressing Dr. Bortnik's opinion. *See* Dkt. No. 13 at 11-17. In response, the Commissioner argues that Dr. Bortnik's neuro-psychological evaluation is not relevant and, in the alternative, stale because it was conducted "over three-and-a-half years" prior to plaintiff's filing for SSA benefits and "did not assess any mental work-related limitations." Dkt. No. 15 at 15. The Commissioner's arguments lack merit.

"[A]n ALJ should not rely on 'stale' [medical source] opinions . . . ." *Steve P. v. Comm'r of Soc. Sec.*, No. 19-CV-492 (MWP), 2021 WL 307566, at *5 (W.D.N.Y. Jan. 29, 2021) (quoting *Robinson v. Berryhill*, No. 1:17-CV-362 (LJV/JJM), 2018 WL 4442267, at *4 (W.D.N.Y. Sept. 17, 2018)). "In general, medical source opinions that are conclusory, stale, and based on an incomplete medical record may not be substantial evidence to support an ALJ finding." *Michael R. D. v. Comm'r of Soc. Sec.*, No. 1:21-CV-215 (JLS),

2023 WL 3869022, at *4 (W.D.N.Y. June 7, 2023) (quoting *Camille v. Colvin*, 104 F. Supp. 3d 329, 343 (W.D.N.Y. 2015), *aff'd*, 652 F. App'x 25 (2d Cir. 2016) (summary order)) (internal quotation marks omitted).  "Medical opinions are rendered 'stale' by a 'new significant diagnosis' or 'significant deterioration' in the plaintiff's condition."  *Angele J. W. v. Comm'r of Soc. Sec.,* No. 6:23-CV-824 (BKS/CFH), 2024 WL 4204301, at *5 (N.D.N.Y. July 24, 2024), *report and recommendation adopted,* No. 6:23-CV-824 (BKS/CFH), 2024 WL 4204017 (N.D.N.Y. Sept. 16, 2024) (quoting *Benitez v. Comm'r of Soc. Sec.*, No. 23-CV-1327 (ARL), 2024 WL 1332612, at *8 (E.D.N.Y. Mar. 28, 2024) (quoting *Andrea G. v. Comm'r of Soc. Sec.*, No. 5:20-CV-1253 (TWD), 2022 WL 204400, at *7 (N.D.N.Y. Jan. 24, 2022))); *see Carney v. Berryhill*, No. 16-CV-269 (FPG), 2017 WL 2021529, at *6 (W.D.N.Y. May 12, 2017) ("[A] medical opinion may be stale if it does not account for the [plaintiff's] deteriorating condition.").  The passage of time does not render a medical source opinion "stale" as long as "the subsequent evidence does not undermine [the opinion evidence]."  *Steve P.*, 2021 WL 307566, at *5 (quoting *Hernandez v. Colvin*, No. 15-CV-6764 (CJS), 2017 WL 2224197, at *9 (W.D.N.Y. May 22, 2017) (citing *Camille v. Colvin*, 652 F. App'x 25, 28 n.4 (2d Cir. 2016) (summary order) (additional citation omitted))).

Here, Dr. Bortnik opined on plaintiff's neuro-psychological conditions and symptoms, more specifically, plaintiff's epilepsy disorder and its residuals.  *See* T. at 351-354.  These are the same symptoms and residuals Drs. Azad, Haas, Stouter, and Wang later reviewed, opinions the ALJ relied on to form his RFC determination.  *See* T. at 26; *Compare* T. at 351-54, *with* 398-408, *and* 418-19.  The Commissioner fails to cite to any evidence indicating that plaintiff's condition changed following Dr. Bortnik's evaluation and

simply argues that Dr. Bortnik's opinion is stale because it is "over three-and-a-half years" old.  Dkt. No. 15 at 15; *see generally* Dkt. No. 15.  This is not enough to render a medical opinion stale.  *See Steve P.*, 2021 WL 307566, at *5.

Further, the undersigned agrees with the Commissioner that Dr. Bortnik issued her neuro-psychological evaluation report in March 2017 and plaintiff filed for SSA benefits in December 2020, alleging a disability onset date of October 31, 2005.  *See* T. at 241-47, 351-57.  However, the undersigned disagrees with the Commissioner that this fact alone renders Dr. Bortnik's opinion "not pertinent to the relevant period."  Dkt. No. 15 at 15.

The SSA is required to develop a "complete medical history for at least the 12 months preceding the month in which" a plaintiff files an application for benefits "unless there is a reason to believe that development of an earlier period is necessary or unless [the plaintiff states] that [their] disability began less than 12 months before [they] filed [their] application."  20 C.F.R. § 404.1512(b)(1).  "For SSI applications, the relevant period is between the date of the application and the date of the ALJ's decision."  *Maruice Johnson B. v. Comm'r of Soc. Sec.*, No. 6:22-CV-6199 (JJM), 2024 WL 4273350, at *4 (W.D.N.Y. Sept. 24, 2024) (quoting *Leisten v. Astrue*, 2010 WL 1133246, *1, n.2 (W.D.N.Y. 2010).  Generally, "[c]onsideration of evidence outside the relevant periods of disability . . . is not afforded significant or convincing weight when reviewing whether an ALJ's conclusions were supported by substantial evidence."  *Anderson v. Comm'r of Soc. Sec. Admin.*, No. 22-CV-1509 (JMW), 2025 WL 660330, at *12 (E.D.N.Y. Feb. 28, 2025) (citing *Mauro v. Berryhill*, 270 F. Supp. 3d 754, 762 (S.D.N.Y. 2017)).

However, ALJs are permitted to and "regularly review" evidence created prior to the filing date, as it is "often relevant" to the claims period.  *Thomas v. Comm'r of Soc.*

*Sec.*, No. 1:18-CV-839 (JJM), 2020 WL 548394, at *3 (W.D.N.Y. Feb. 4, 2020) (quoting *Hussain v. Comm'r of Soc. Sec.*, No. 13 CIV. 3691 (AJN/GWG), 2014 WL 4230585, at *12 (S.D.N.Y. Aug. 27, 2014), report and recommendation adopted, No. 13-CV-3691 (AJN-GWG), 2014 WL 5089583 (S.D.N.Y. Sept. 25, 2014)) ("ALJs regularly review prior evidence for the purpose of considering an open application, as such evidence is often relevant to the claimant's medical condition for the period in which benefits are claimed."). "In fact, there are many instances where an ALJ must consider such prior evidence to properly assess the severity of the claimant's medical condition during the open application period." *Id.*  "[E]vidence from before or after the relevant time period often provides necessary context for a disability claim and, if so, an ALJ cannot simply ignore it." *Angele J. W.*, 2024 WL 4204301, at *5 (quoting *Cheri Lee H. v. Comm'r of Soc. Sec.*, No. 5:19-CV-10 (DNH), 2020 WL 109007, at *5 (N.D.N.Y. Jan. 9, 2020) ("For instance, if plaintiff's evidence suggesting that she suffered frequent migraines (at least before the relevant time period) stood uncontested in the record, it might well be inappropriate for the ALJ to ignore it or to reject it out of hand."); *Norman v. Astrue*, 912 F. Supp. 2d 33, 82 n.74 (S.D.N.Y. 2012) (citation omitted) ("[T]he mere absence of contemporaneous medical evidence of a disabling condition during the relevant time period does not necessarily preclude a finding of disability."); *Cf. Robert V. v. Kijakazi*, No. 3:21-CV-377 (MPS), 2022 WL 4536838, at *3 (D. Conn. Sept. 28, 2022) (concluding that the ALJ did not overlook evidence regarding plaintiff's neurologic and cardiac conditions when there was "no indication that the evidence from outside of the relevant period reflects Plaintiff's condition during the relevant period."); *Gibson v. Comm'r of Soc. Sec.*, No. 5:17-CV-827 (DEP), 2018 WL 2085635, at *6 (N.D.N.Y. May 3, 2018) (concluding that a medical

source's "report is not material because it concerns her evaluation of plaintiff's condition at a point outside of the relevant time period.").

Accordingly, the undersigned concludes that although Dr. Bortnik's opinion was proffered prior to plaintiff's filing date, the conditions and symptoms she reviewed were the same as the conditions and symptoms the other medical sources reviewed during the claims period; therefore, Dr. Bortnik's opinion is relevant to the ALJ's RFC analysis and should have been addressed. *See Angele J. W.*, 2024 WL 4204301, at *5; *Thomas*, 2020 WL 548394, at *3; *Garcia Medina v. Comm'r of Soc. Sec.*, No. 17-CV-6793-JWF, 2019 WL 1230081, at *2 (W.D.N.Y. Mar. 15, 2019) (citation omitted) ("While the ALJ may have had sound arguments to discredit some of these opinions – either because they were from non-acceptable medical sources, were not particularly helpful, or came before the alleged onset date – they were relevant at the very least and she should have at least addressed them.").

Additionally, in assessing plaintiff's mental health limitations, generally, Dr. Bortnik made the following recommendations:

- Designating a specific storage location for keys, wallet, etc., to reduce instance of misplacing or losing objects.
- Using mnemonic strategies to encode and remember information (e.g. recall word "MAT" for grocery list containing *m*ilk, *a*pples, *t*omatoes).
- Use the voice memo or voice recorder function on your cell phone or personal tablet to record ideas or other information you want to remember. (This is especially helpful if you don't have a pen and paper to write info down).
- Maintaining a predictable routine and structured environment that incorporates checklists and reminders.
- Focusing on one task at a time (vs. multi-tasking) and completing one task in its entirety before moving on to the next task.
- Completing tasks or projects in a distraction free environment (i.e. minimize background distractions and noises by turning off the TV or radio).

- Take regular breaks during tasks that require prolonged attention. Frequent/regular breaks from complex tasks can help reduce errors by preventing lapses in attention.
- Write down important information that needs to be remembered (i.e. doctors' appointments, shopping lists, etc.).  Dry erase boards set up in a central location in the home may be particularly effective in this regard.

T. at 354.  The Commissioner argues that the ALJ's failure to discuss Dr. Bortnik's opinion was not legal error because it "did not assess any mental work-related limitations." Dkt. No. 15 at 15.  This position is illogical.  Although Dr. Bortnik did not use the words "mental work-related limitations," the Commissioner fails to explain how Dr. Bortnik's recommendations for plaintiff to overcome his mental limitations would not translate to any work environment or impact plaintiff's ability to work.   That Dr. Bortnik is recommending plaintiff implement such strategies suggests limitations in memory and focus, possibly as a result of his mental health condition.

Although the failure to discuss a medical opinion may constitute harmless error, the undersigned concludes such error is not harmless in this matter, and "[t]his failure alone suffices as grounds for remand."  *Hahn*, 2023 WL 4975970, at *4  ("The ALJ did not consider all the medical opinion evidence because the ALJ did not discuss or mention Dr. Goldstein's assessment[,]" and "by failing to discuss Dr. Goldstein's assessment at all, the ALJ necessarily failed to discuss whether the assessment was supported by and consistent with other medical evidence in the record, as required by § 404.1520(c)(b)(2)."); *Forrest v. Comm'r of Soc. Sec. Admin.*, No. 23-CV-307 (JMW), 2025 WL 788996, at *18 (E.D.N.Y. Mar. 12, 2025) (same);  *Agostino v. Kijakazi*, No. 22-CV-7235 (PKC), 2024 WL 1259247, at *4 (E.D.N.Y. Mar. 25, 2024) ("Here, the ALJ failed to specifically address Dr. De La Chappelle's opinion, let alone mention Dr. De La Chappelle

by name.") (citing *Velasquez v. Kijakazi*, No. 19-CV-9303 (DF), 2021 WL 4392986, at *28 (S.D.N.Y. Sept. 24, 2021)) (holding that the ALJ failed to consider all the medical opinions of record where the decision did not address the opinion of a consultative examiner); *Keeby o/b/o T.K. v. Comm'r of Soc. Sec.*, No. 21-CV-1202 (PKC), 2022 WL 4451004, at *9 (E.D.N.Y. Sept. 23, 2022) ("[T]he ALJ's failure to sufficiently explain how he evaluated the medical opinions in the record warrants remand."); *Prieto v. Comm'r of Soc. Sec.*, No. 20-CV-3941 (RWL), 2021 WL 3475625, at *9 (S.D.N.Y. Aug. 6, 2021) ("[A]n ALJ's failure to properly consider and apply the requisite factors is grounds for remand.") (internal quotation marks, citation, and alteration omitted).    Therefore, the undersigned recommends that the ALJ's decision be vacated and remanded for consideration of Dr. Bortnik's opinion.  *See* 20 C.F.R. § 404.1520c(b); *Crane*, 2024 WL 4569417, at *14; *Hahn* 2023 WL 4975970, at *4.

### C.  Dr. Azad's Medical Opinion

"RFC describes what a claimant is capable of doing despite his or her impairments, considering all relevant evidence, which consists of physical limitations, symptoms, and other limitations beyond the symptoms."  *Joseph J. B.*, 2024 WL 4217371, at *8 (quoting *Malcolm M. v. Comm'r of Soc. Sec.*, No. 1:17-CV-986 (CFH), 2019 WL 187725, at *4 (N.D.N.Y. Jan. 14, 2019) (first citing *Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999), then citing 20 C.F.R. §§ 404.1545, 416.945))).  "[A]n RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ."  *Id*. (quoting *Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46, 48 n.3 (2d Cir. 2021) (summary order) (citing 20 C.F.R. § 404.1527(d)(2))).  "In assessing RFC, the ALJ's findings must specify the functions plaintiff is capable of performing; conclusory statements regarding plaintiff's

capabilities are not sufficient." *Id*. (quoting *Martone*, 70 F. Supp. 2d at 150) (citations omitted).

"In making the RFC determination, the ALJ must consider all relevant medical and other evidence, including any statements about what the claimant can still do provided by any medical sources." *Joseph J. B.*, 2024 WL 4217371, at *8 (citing 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c)). "[T]he ALJ's conclusion [need] not perfectly correspond with any of the opinions of medical sources cited in his [or her] decision, [and] he [or she i]s entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Id*. (quoting *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order)). "The Court 'defer[s] to the Commissioner's resolution of conflicting evidence[.]'" *Id*. (quoting *Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (summary order)) (internal citation omitted). "Therefore, even if a plaintiff disagrees with the ALJ's assessment of opinion evidence and can point to evidence in the record to support his or her position, whether there is substantial evidence supporting the [plaintiff's] view is not the question; rather, [the Court] must decide whether substantial evidence supports the ALJ's decision." *Id*. (quoting *Elizabeth P. v. Comm'r of Soc. Sec.*, No. 3:20-CV-891 (CFH), 2022 WL 507367, at *4 (N.D.N.Y. Feb. 18, 2022)) (internal quotation marks and citation omitted). "The ALJ must not ignore evidence or cherry pick only the evidence from medical sources that support a particular conclusion and ignore the contrary evidence, but [t]he Court will not reweigh the evidence that was before the ALJ." *Id*. (quoting *April B. v. Saul*, No. 8:18-CV-682 (DJS), 2019 WL 4736243, at *6 (N.D.N.Y. Sept. 27, 2019)) (internal quotation marks and citations omitted).

"For claims filed on or after March 27, 2017," an ALJ need "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) ['PAMFs'], including those from [a claimant's] medical sources." 20 C.F.R. § 416.920c(a) (internal citation omitted). Rather medical opinions and PAMF's are evaluated based on their "persuasiveness." *Id.* In evaluating the "persuasiveness" of a medical opinion or PAMF, an ALJ is to "consider" the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) "other factors." *Id.* §§ 416.920c(a); 416.920c(c)(1)-(5). "However, in many cases, the ALJ only need 'explain' how the supportability and consistency factors were considered, as they are 'the most important factors.'" *Brian K. v. Comm'r of Soc. Sec.*, No. 5:24-CV-26 (CFH), 2025 WL 18718, at *4 (N.D.N.Y. Jan. 2, 2025) (quoting 20 C.F.R. § 416.920c(b)(2)); *see also* 20 C.F.R. § 416.920c(b)(2)-(3) (stating that an ALJ "is not required to" explain the remaining factors unless the ALJ determines that "two or more medical opinions or [PAMFs] about the same issue are both equally well-supported [ ] and consistent with the record [ ] but are not exactly the same").

For the "supportability" prong, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or [PAMFs], the more persuasive the medical opinion(s) or [PAMFs] will be." 20 C.F.R. § 416.920c(c)(1); *see also Kathleen A. v. Comm'r of Soc. Sec.*, No. 3:20-CV-1034 (LEK), 2022 WL 673824, at *4 (N.D.N.Y. Mar. 7, 2022) (quoting *Carmen M. v. Comm'r of the Soc. Sec.*, No. 20-CV-6532 (MJR), 2021 WL 5410550, at *4 (W.D.N.Y. Nov. 19, 2021)) (noting that "[t]he supportability analysis focuses on 'how well

a medical source supported their opinion(s) with objective medical evidence and supporting explanations'"). With regard to the "consistency" prong, "[t]he more consistent a medical opinion(s) or [PAMFs] is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or [PAMFs] will be." 20 C.F.R. § 416.920c(c)(2); *see also Kathleen A.*, 2022 WL 673824, at *5 (first quoting 20 C.F.R. § 404.1520c(c)(2); then citing *Galo G. v. Comm'r of the Soc. Sec.*, No. 20-CV-1011 (FJS), 2021 WL 5232722, at *4 (N.D.N.Y. Nov. 9, 2021)) ("In the consistency analysis, an ALJ must look outside the medical opinion itself to 'evidence from other medical sources and nonmedical sources in the claim,' and will find the medical opinion more persuasive the more consistent it is with these external sources.").

     "ALJs are not required to state on the record every reason justifying a decision and [are] not required to discuss every single piece of evidence submitted." *Brian K.*, 2025 WL 18718, at *4 (quoting *Ryan v. Comm'r of Soc. Sec.*, No. 21-2947-CV, 2022 WL 17933217 at *2 (2d Cir. Dec. 27, 2022) (summary order) (quoting *Brault*, 683 F.3d at 448)) (internal quotation marks omitted). "However, they must articulate how persuasive they found the medical opinions and PAMFs." *Id*. (citing 20 C.F.R. § 416.920c(b)). "If the ALJ fails adequately to 'explain the supportability or consistency factors,' or bases '[the] explanation upon a misreading of the record, remand is required.'" *Id*. (quoting *Rivera v. Comm'r of Soc. Sec.*, No. 19-CV-4630 (LJL/BCM), 2020 WL 8167136, at *14 (S.D.N.Y. Dec. 30, 2020) (quoting *Andrew G. v. Comm'r of Soc. Sec.*, No. 3:19-CV-942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020), *report and recommendation adopted* 2021 WL 134945 (Jan. 14, 2021))); *see also Jennifer A. v. Comm'r of Soc. Sec.*, No. 1:22-CV-

1167 (MAD), 2023 WL 8654215, at *4 (N.D.N.Y. Dec. 13, 2023) (quoting *Eric G. v. Comm'r of Soc. Sec.*, No. 5:21-CV-1314 (MAD), 2023 WL 3004780, *4, n.1 (N.D.N.Y. Jan. 5, 2023)) ("The ALJ need not specifically write the terms 'supportability' or 'consistency' to meet the articulation requirements in 20 C.F.R. §§ 404.1520c and 416.920c; it is enough that the ALJ applied the proper legal analysis.")

The ALJ relied, in part, on Dr. Azad's consultative medical examination report to determine plaintiff's physical RFC.  *See* T. at 25-26.  The undersigned concludes that in the ALJ's analysis of Dr. Azad's medical opinion there are multiple errors requiring warranting remand.

### 1.  **Reaching Limitations**

#### a.  **Supportability and Consistency**

The ALJ noted how Dr. Azad opined that plaintiff "is moderately limited in his ability to lift, carry, and reach."  T. at 25.  The ALJ explained that

> [e]ven though Dr. Azad examined claimant only once, I find that his opinion is generally persuasive because his clinical observations support his findings and because his findings are largely consistent with the medical evidence discussed above. However, his limitation to moderate reaching is vague and is neither supported by his examination nor by the overall record [e.g. 8A p. 15], and such limit is inconsistent with claimant's activities of daily living.

*Id*. at 25-26.  The ALJ's explanation for rejecting Dr. Azad's reaching limitation opinion fails to satisfy the supportability and consistency factors of 20 C.F.R. § 416.920c.  The ALJ's explanation briefly discusses the evidence of record that contradicts the supportability factor for Dr. Azad's opinion, but this discussion does not provide any meaningful analysis of such evidence and is insufficient to satisfy the requirements of 20

C.F.R. § 416.920c.  *See* T. at 22-27.  Moreover, the ALJ fails to discuss the consistency factor as it applies to Dr. Azad's reaching limitation opinion.  *See id*.; 20 C.F.R. § 416.920c.

As plaintiff argues, the ALJ's only citation in support of his statement that Dr. Azad's reaching limitation opinion is vague and unsupported by his examination of record is to one page of a PAMF, completed by Dr. Wang, that conclusorily states that there are "medical opinions about the individual's abilities and limitations that are more restrictive than your findings."  *Id*. at 131; Dkt. No. 13 at 18.  Although Dr. Wang lists the medical evidence he considered in formulating his opinion, which includes Dr. Azad's report, Dr. Wang also fails to explain why he concluded that plaintiff's reaching limitations are less restrictive than those Dr. Azad proposed.  *See* T. at 130-31.  By citing solely to Dr. Wang's opinion as the "overall record," it is unclear if the ALJ considered all the evidence of record.  *Id*. at 26 (citing T. at 131); *see* Dkt. No. 13 at 18; *Joseph J. B.*, 2024 WL 4217371, at *8 (citing 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c)).

Further, the ALJ failed to explain why Dr. Azad's opinion of moderate reaching limitation was vague.  Dr. Azad examined plaintiff in person; performed range of motion testing; and diagnosed plaintiff with neck, left shoulder, and low back pain.  *See* T. at 400.  It is unclear what additional testing, information, or rationale the ALJ expected Dr. Azad to provide in rendering his moderate reaching limitation opinion.

### b.  **ADL**

Plaintiff also correctly argues that the ALJ improperly relied on his activities of daily living ("ADL") to reject Dr. Azad's findings of moderate reaching limitations.  *See* Dkt. No. 13 at 20.  In relying on plaintiff's ADL, the ALJ reasoned that the

> claimant and his mother do not appear to have alleged any particular
> limitations to his ability to use his hands in function reports completed on

December 21, 2020 and May 20, 2021 (Exhibit C4E, p. 6; Exhibit C8E, p. 6).  Notably, claimant reported that he was able to perform a number of household chores, including doing laundry, mowing the grass, and cleaning up yard debris (Exhibit C8E, p. 3).  Claimant stated that he has no problems dressing, bathing, caring for his hair, shaving, feeding himself, or using the toilet (Exhibit C8F, p. 2).

T. at 27.[6]

Yet, the ALJ did not explain how plaintiff's ADL support an ability to perform light work or maintain regular employment.  "[W]hile an ALJ may properly consider these activities when assessing the intensity and persistence of symptoms . . . the ALJ here appeared to place disproportionate weight on [P]laintiff's activities of daily living, none of which equate to the ability to perform substantial gainful activity."  *Alexandria S. v. Comm'r of Soc. Sec.*, No. 6:22-CV-20 (MAD/DJS), 2023 WL 2863323, at *4 (N.D.N.Y. Feb. 3, 2023), *report and recommendation adopted,* No. 6:22-CV-20 (MAD/DJS), 2023 WL 2583212 (N.D.N.Y. Mar. 21, 2023) (first citing *Tenesha G. v. Comm'r of Soc. Sec.*, No. 5:20-CV-1070 (DNH), 2022 WL 35998, at *7 (N.D.N.Y. Jan. 4, 2022); then quoting *David F. v. Comm'r of Soc. Sec. Admin.*, No. 3:21-CV-315 (SALM), 2021 WL 5937670, at *9 (D. Conn. Dec. 16, 2021) (quoting *Berg v. Colvin*, No. 3:14-CV-1042 (SALM), 2016 WL 53823, at *8 (D. Conn. Jan. 5, 2016))) (internal citation and quotation marks omitted); *see also Munoz v. Comm'r of Soc. Sec.*, No. 20-CV-2496 (KAM), 2021 WL 4264814, at *6 (E.D.N.Y. Sept. 20, 2021) (quoting *Bigler v. Comm'r of Soc. Sec.*, No. 19-CV-3568 (AMD), 2020 WL 5819901, at *5 (E.D.N.Y. Sept. 29, 2020) (quoting *Vasquez v. Barnhart*, No. 02-CV-6751, 2004 WL 725322, at *11 (E.D.N.Y. Mar. 2, 2004))) ("[A] finding that a claimant is capable of undertaking basic activities of daily life cannot stand in for a determination

---

[6] The undersigned notes Exhibit C8F at 2 does not contain the information that the ALJ references and that the ALJ's citation is likely a scrivener's error and meant to cite to Exhibit C8E at 2.

of whether that person is capable of maintaining employment, at least where there is no evidence that the claimant engaged in any of these activities for sustained periods comparable to those required to hold a sedentary job.") (internal quotation marks omitted).

The Second Circuit has "stated on numerous occasions that 'a claimant need not be an invalid to be found disabled' under the Social Security Act." *Alexandria S.*, 2023 WL 2863323, at *4 (quoting *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (quoting *Williams v. Bowen*, 859 F.2d 255, 260 (2d Cir. 1988))); *Moss v. Colvin*, No. 1:13-CV-731 (GHW/MHD), 2014 WL 4631884, at *33 (S.D.N.Y. Sept. 16, 2014) ("It is well-settled in the Second Circuit that the capacity to care for oneself does not, in itself, contradict a claim of disability as people should not be penalized for enduring the pain of their disability in order to care for themselves.") (internal citation and quotation marks omitted). "There are critical differences between activities of daily living (which one can do at his own pace when he is able) and keeping a full time job." *Id.* (quoting *David F.*, 2021 WL 5937670, at *9 (quoting *Moss*, 2014 WL 4631884, at *33)). "[A]n ALJ should take into account whether any evidence of daily activities shows that the claimant engage[d] in any of these activities for sustained periods comparable to those required to hold . . . a job." *Id.* (quoting *Kelly W. v. Kijakazi*, No. 3:20-CV-948 (JCH), 2021 WL 4237190, at *10 (D. Conn. Sept. 17, 2021) (quoting *Balsamo*, 142 F.3d at 81))).

Here, the ALJ failed to consider any qualifications and limitations plaintiff placed on his ADL. *See Alexandria S.*, 2023 WL 2863323, at *4 (quoting *Kelly W*, 2021 WL 4237190, at *10 (quoting *Eldridge v. Colvin*, No. 15-CV-3929 (NSR/PED), 2016 WL 11484451, at *15 (S.D.N.Y. June 29, 2016), *report and recommendation adopted,* No. 15-CV-3929 (NSR/PED), 2016 WL 6534258 (S.D.N.Y. Nov. 2, 2016))) ("An ALJ may not rely

on a claimant's daily activities to discredit her while 'wholly ignor[ing] the qualifications that Plaintiff placed on [her] ability to engage in [those] activities.'").  As stated above, in determining plaintiff's physical RFC, the ALJ relied upon "functional reports completed on December 21, 2020[,] and May 20, 2021[,]" noting that plaintiff "reported that he was able to perform a number of household chores, including doing laundry, mowing the grass, and cleaning up yard debris."  T. at 27.  Yet, the ALJ disregarded the limitations plaintiff placed on his ability to reach or perform related household chores.  The ALJ noted that plaintiff reported that he had difficulty reaching but did not address this reported limitation further.  *See id.* at 23, 304.  Similarly, plaintiff's testimony that he does not perform any housework or mow the lawn and "can shovel snow a little bit but not much" due to a fractured collarbone directly contradicts the earlier functional reports.  *Id.* at 41-42.  The ALJ did not discuss plaintiff's later self-reported limitations or analyze plaintiff's testimony as it relates to limitations of his ADL specific to reaching.

### 3.  **Manipulative Limitations**

The ALJ also rejected plaintiff's alleged manipulative limitations, explaining that

> I did not assess any manipulative limitations because there does not appear to be any objective medical evidence supporting those limitations. For example, while Tinel's sign was positive in the right wrist, Dr. Azad indicated that hand and finger dexterity were intact and that grip strength was 5/5 bilaterally during the consultative internal medicine examination on March 2, 2021 (Exhibit C6F, p. 3).

T. at 26-27.  Yet, the ALJ does not reconcile how "intact" hand and finger dexterity and full grip strength refutes Dr. Azad's finding of a positive Tinel's sign or that this evidence equates to a lack of manipulative limitations such that plaintiff's work-related capacities are not at all impacted.  T. at 27; *see Kinslow v. Colvin*, No. 5:12-CV-1541 (GLS/ESH), 2014 WL 788793, at *5 (N.D.N.Y. Feb. 25, 2014) (citing *Hazlewood v. Commissioner of*

*Soc. Sec.,* No. 6:12-CV-798 (DNH/ATB), 2013 WL 4039419, at *5 (N.D.N.Y. Aug. 6, 2013) (additional citation omitted)) ("[W]hen medical findings merely diagnose impairments without relating diagnoses to specific residual physical, mental and other work-related capacities, an administrative law judge's determination of residual functional capacity without a medical advisor's assessment of those capacities is not supported by substantial evidence."); *Ramos v. Colvin*, No. 13-CV-6503P (MWP), 2015 WL 925965, at *9 (W.D.N.Y. Mar. 4, 2015) (quotation omitted) (holding "[w]here the medical findings in the record merely diagnose [the] claimant's exertional impairments and do not relate those diagnoses to specific residual functional capabilities, as a general rule, the Commissioner may not make the connection himself.").

Similarly, the ALJ does not discuss the "objective medical evidence" he relies on or explain how this evidence refutes (1) the positive Tinel's sign, and (2) plaintiff's reports of suffering from manipulative limitations.  T. at 27, 41-42, 45-46, 306.  Plaintiff checked the box on his May 2021 functional report indicating that his conditions affected his ability to use his hands, and he stated that he has difficulty writing and used "rubber hand stamps" to help him provide his medications, addresses, and name on forms.  T. at 306; *see id*. at 304.  As such, the ALJ's conclusion that plaintiff did not "appear to have alleged any particular limitations to his ability to use his hands in" the functional report "completed on December 21, 2020[,]" is incorrect.  *Id*. at 27.

Further, Plaintiff testified that "[i]t's hard to pick up a one[-]gallon container with the left hand so I don't pick up a gallon container of milk."  T. at 43.  He also stated that (1) despite having carpal tunnel release surgery, he still has difficulties with his right hand such that he must hold a pen to write in a specific way, (2) he cannot hold a cup of water

for too long, and (3) "it hurts after a while" if he uses his right hand too much.  *Id*. at 45-46.  The ALJ did not address this evidence, and in failing to have a medical professional review plaintiff's self-reported limitations, it appears that the ALJ substituted his own judgment for that of a competent medical opinion.  *Id*. at 27; *see Balaguer Perez v. Berryhill*, No. 17-CV-3045 (JMA), 2019 WL 1324949, at *5 (E.D.N.Y. Mar. 25, 2019) (quoting *Balsamo*, 142 F.3d at 81 ("[A]lthough the RFC determination is an issue reserved for the ALJ, an ALJ 'cannot arbitrarily substitute [her] own judgment for [a] competent medical opinion.'") (internal citation omitted)); *Hilsdorf v. Comm'r of Soc. Sec.*, 724 F. Supp. 2d 330, 347 (E.D.N.Y. 2010) (citation omitted) ("Because an RFC determination is a medical determination, an ALJ who makes an RFC determination in the absence of supporting expert medical opinion has improperly substituted his own opinion for that of a physician, and has committed legal error.").   "Stated another way, when no medical source opinion supports an administrative law judge's residual functional capacity finding, that finding lacks substantial evidentiary support."  *Kinslow*, 2014 WL 788793, at *5 (citation omitted); *John K. v. Comm'r of Soc. Sec.*, No. 23-CV-648 (JLS), 2025 WL 1248727, at *4, n.5 (W.D.N.Y. Apr. 29, 2025) (quoting *Jordan v. Berryhill*, No. 1:17-CV-509(JJM), 2018 WL 5993366, at *3 (W.D.N.Y. Nov. 15, 2018)) ("[T]he RFC appears to be based upon [the ALJ's] lay opinion of plaintiff's limitations, which is not permitted and requires remand.").

Therefore, the undersigned concludes that (1) the ALJ failed to properly evaluate the medical opinion evidence, (2) the ALJ improperly relied on plaintiff's ADL, and (3) the ALJ's physical RFC determination is not supported by substantial evidence.  *See Joseph J. B.*, 2024 WL 4217371, at *8 (citing 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c));

*Alexandria S.*, 2023 WL 2863323, at *4.  It is recommended, that on remand, the ALJ reevaluate (1) plaintiff's reaching and manipulation limitations; (2) plaintiff's ADL; and (3) the supportability and consistency factors as they relate to Dr. Azad's opinion.  *See* 20 C.F.R. §§ 416.920c(c)(1), 416.920c(c)(2); *Kathleen A.*, 2022 WL 673824, at *5; *Balaguer Perez*, 2019 WL 1324949, at *5; *John K.*, 2025 WL 1248727, at *4, n.5.; *Angele J. W.*, 2024 WL 4204301, at *5; *Lozito v. Comm'r of Soc. Sec. Admin.*, No. 21-CV-5969 (JMW), 2025 WL 473978, at *15 (E.D.N.Y. Feb. 12, 2025), *amended in part,* No. 21-CV-5969 (JMW), 2025 WL 832501 (E.D.N.Y. Mar. 16, 2025) ("[T]he Court finds the ALJ's RFC determination resulted from a flawed evaluation of medical opinion evidence such that remand is warranted.") (internal quotation marks omitted); *Kathleen M. v. Comm'r of Soc. Sec.*, No. 8:20-CV-1040 (TWD), 2022 WL 92467, at *9 (N.D.N.Y. Jan. 10, 2022) (citing 20 C.F.R. § 404.1545(a)(3)) ("A flawed evaluation of medical opinion evidence also impacts the ALJ's assessment of a claimant's residual functional capacity.").

The undersigned further recommends that, on remand, the ALJ be instructed to reevaluate plaintiff's mental RFC and his conclusions regarding the supportability and consistency factors of state consultative examiner Dr. Jaime Haas, Psy.D.'s opinion, as the ALJ's analysis may change after considering Dr. Bortnik's opinion.  *See* T. at 402-06; *see also Lena Nicole H. v. Comm'r of Soc. Sec.*, No. 1:23-CV-826 (MAD/TWD), 2024 WL 4133819, at *5 (N.D.N.Y. July 30, 2024) (quoting 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2) ("An ALJ is specifically required to explain how [he or she] considered the supportability and consistency factors for a medical opinion.") (internal quotation marks omitted)); *Rivera*, 2020 WL 8167136, at *14 (quoting *Andrew G.*, 2020 WL 5848776, at *5).

V. **Conclusion**

**WHEREFORE**, for the reasons set forth herein, it is hereby:

**RECOMMENDED**, that plaintiff's cross-motion (Dkt. No. 13) be **GRANTED**; and it is further

**RECOMMENDED**, that the Commissioner's cross-motion (Dkt. No. 15) be **DENIED**, and the Commissioner's decision be reversed and remanded for further proceedings consistent with this Report-Recommendation and Order; and it is

**ORDERED**, that the Clerk serve a copy of this Report-Recommendation and Order on all parties in accordance with Local Rules.

 **IT IS SO ORDERED**.

Pursuant to U.S.C. §636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. §636(b)(1); FED. R. CIV P. 6(a), 6(e), 72.


Dated:  August 4, 2025
      Albany, New York


_____
 Paul J. Evangelista
 U.S. Magistrate Judge